UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UTILITY CONSTRUCTION SERVICES, L.L.C., | § § § | |
| Plaintiff, | § § § | |
| v. | § § § | CIVIL ACTION NO. 3:25-CV-1190-B |
| JESSE WALTERS and TEMPEST ENERGY, L.L.C., | § § § § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Utility Construction Services LLC ("Utility")'s Motion for injunctive relief (Doc. 86). The Court held a hearing on this Motion on July 15, 2025. For the following reasons, the Court **DENIES** Utility's Motion.

I.

BACKGROUND

This case arises from an employment dispute. Defendant Jesse Walters worked for Utility between 2019 and 2024. Doc. 88, Utility's App'x, 10, 13–14. Utility works in the electric industry. It "constructs overhead, transmission, and distribution lines; constructs foundations; clears right-of-way; and provides matting services to clients throughout the United States." Doc. 87, Br., 1. Walters worked as a Manager of Estimating and Business Development. Doc. 88, Utility's App'x, 10. He was responsible for estimating projects and managing Utility's bidding process. *Id.* at 13, 17. Walters had extensive knowledge of Utility's confidential pricing

information and how Utility approached bidding proposals for electric utility construction projects. *Id.* at 1.

In 2022, Walters entered a Retention Agreement (the "Agreement") with Utility. *Id.* at 24. The Agreement is governed by Texas law and includes an 18-month non-compete covenant:

> During the Restricted Period, Employee shall not, directly or indirectly, engage or participate (whether as a principal, agent, employee, employer, consultant, investor or partner), make any financial investments in, or become employed by or render services to or for any person or other business enterprise (other than [Utility] and its affiliates) that renders or is engaged in the business of owning, managing, operating or otherwise engaging in, directly or indirectly, the construction, maintenance, or repair of transmission electric infrastructure (which work includes installing poles, stringing wires, work within substations related to the poles and wire, setting foundations, installing matting and right-of-way clearing) within Texas, Louisiana, Mississippi and Oklahoma, all of which are regions in which Employee actively performs work on behalf of [Utility].

*Id.* at 36–37.

The non-compete restricts Walters's employment at "transmission electric infrastructure" companies. *Id.* There are three principal components to the electricity industry: "generation of power; transmission of that power on high-voltage lines over long distances; and distribution of power over shorter distances to the ultimate consumer." *City Pub. Serv. Bd. of San Antonio v. Public Util. Comm'n*, 9 S.W.3d 868, 870 (Tex. App.–Austin 2000), *aff'd*, 53 S.W.3d 310, 312 (Tex. 2001). Transmission electric infrastructure transports electricity over long-distances from power plants to substations. In contrast, distribution electric infrastructure delivers electricity from substations to consumers' homes and businesses. The parties explained the difference at the hearing.

In August 2024, Walters resigned from Utility. Doc. 88, Utility's App'x, 17–18. Walters began working for Tempest Management Services, LLC ("TMS") in November 2024. Doc. 103, Tempest TRO App'x, 2. TMS helps utility companies rebuild distribution electric infrastructure

that was damaged by storms. *Id.* At TMS, Walters verifies rates for storm projects. Doc. 98, Walters's App'x, 13. He does not work on transmission projects. *Id.*

Even though Walters is employed by TMS, Utility sued Tempest Energy, LLC ("TES"), a different Tempest entity. TES is an LLC organized under the laws of Louisiana with its principal place of business in Louisiana. *Id.* Its sole member is a citizen of Louisiana. *Id.* TES has no employees in Texas. *Id.* It does not maintain an office in Texas. *Id.* at 2–3. Walters works out of Mississippi and reports to the corporate office in Louisiana. *Id.* at 3.

Utility filed suit against Walters and TES,[1] asserting a total of 16 claims. Doc. 80, Second Am. Compl., ¶¶ 37–112. Utility seeks a temporary restraining order, a preliminary injunction, and a permanent injunction.

Utility claims it is entitled to injunctive relief against Walters for breach of contract. Specifically, Utility seeks "a temporary restraining order and preliminary and permanent injunction to prevent Walters from working directly or indirectly for, on behalf of, or for the benefit of any company that is engaged in competition with Plaintiff of any of its service product lines, divisions, or business units, or its owners." Doc. 87, Br., 11.

Utility seeks injunctive relief against TES for tortious interference with a contract. Specifically, Utility seeks "a temporary restraining order and preliminary and permanent injunction to prevent TES from continuing to tortiously interfere with Walters's Retention Agreement with UCS." *Id.* The Court considers Utility's Motion below.

## II.

## LEGAL STANDARD

---

[1] Utility conceded at the hearing that Walters is employed by TMS and that it inadvertently sued the wrong Tempest entity.

"Injunctive relief is an extraordinary and drastic remedy, and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (internal quotation omitted). A plaintiff seeking a preliminary injunction must establish (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction should only be granted if the party seeking the injunction has clearly carried the burden of persuasion on all factors. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

## III.

## ANALYSIS

The Court **DENIES** Utility's Motion for injunctive relief in its entirety. First, the Court converts Utility's Motion to a motion only seeking a preliminary injunction. Second, the Court denies Utility's request for injunctive relief on its breach of contract claim against Walters because it did not demonstrate a likelihood of success on the merits. Third, the Court denies Utility's request for injunctive relief against TES because Utility failed to show that the Court has personal jurisdiction over TES.

A. *The Court Converts Utility's Motion to a Motion Only Seeking a Preliminary Injunction.*

Utility filed its Motion seeking both a Temporary Restraining Order and a Preliminary Injunction. Doc. 86, Mot., 1. District courts have "discretion to convert a TRO motion to a PI motion when the other side has received notice" of the motion. *Esparza v. Bd. of Trs.*, 182 F.3d 915 at *2 (5th Cir. 1999). Here, TES and Walters received notice of Utility's Motion because they both filed Responses to it. Doc. 97, Walters Resp.; Doc. 103, Tempest Resp. Therefore, the

Court converts the Motion to a motion for a preliminary injunction. *See Esparza*, 182 F.3d 915 at *2.

B.  *The Court Denies Utility's Request for Injunctive Relief Against Walters.*

As a preliminary matter, Utility argues that Walters contractually agreed to injunctive relief to enforce the Agreement. Doc. 87, Br., 9. However, this contractual stipulation is not binding on the Court and cannot "alone justify the imposition of a preliminary injunction–a form of extraordinary relief." *Tex. Health & Hum. Servs. Comm'n v. United States*, 166 F. Supp. 3d 706, 712 (N.D. Tex. 2016) (Godbey, J.). Accordingly, the Court must independently evaluate whether Utility established the elements necessary to prevail on its request for injunctive relief. It failed to do so.

The Court denies Utility's request for injunctive relief on its breach of contract claim against Walters because it did not demonstrate a likelihood of success on the merits. "To demonstrate a likelihood of success on the merits, the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment." *Marquis Software Sols., Inc. v. Robb*, No. 3:20-CV-0372-B, 2020 WL 955901, at *4 (N.D. Tex. Feb. 27, 2020) (Boyle, J.) (internal quotation and citation omitted).

Utility argues that Walters's current employment with TMS breaches his non-compete. "The elements of a breach of contract claim under Texas law are: 1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages to the plaintiff resulting from the breach." *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544–45 (5th Cir. 2003). "A covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement . . . [and] it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable." TEX. BUS. &

COM. CODE § 15.50(a). The employer bears the burden of proof. *Id.* Walters argues that his current job does not violate the non-compete, and even if it did, the non-compete unreasonably restrains trade. Doc. 97, Walters's Resp., 11–14.

Utility did not demonstrate a likelihood of success on the merits. Even assuming the Agreement is valid,[2] Walters's current employment with TMS does not violate the noncompete because TMS does not provide transmission services. The Agreement prohibits Walters from working for a business "that renders or is engaged in the business of owning, managing, operating or otherwise engaging in, directly or indirectly, the construction, maintenance, or repair of *transmission* electric infrastructure." Doc. 88, Pl.'s App'x, 10 (emphasis added). Walters is not violating the Agreement because TMS only provides storm relief to rebuild *distribution* electric infrastructure.

Utility states that "Tempest is a direct competitor" and like Utility, "provides services for electric utility clients throughout the United States." Doc. 87, Br., 4. But being a competitor is not enough to breach the non-compete. Instead, Utility must show that TMS is engaged in the business of transmission electric infrastructure. It failed to do so. Utility argued that other Tempest entities performed transmission services, but it failed to introduce any evidence establishing that TMS is in the business of transmission electric infrastructure. And at the hearing, Walters testified that he did not perform any work on transmission through the course of his employment with TMS.

Because Utility cannot demonstrate a substantial likelihood of success on the merits, it is not necessary for the Court to address the other factors for injunctive relief. *See Johnson v. Fed.*

---

[2] The Court need not decide whether the Agreement is enforceable as written because it finds that Walters's current employment does not violate the Agreement.

*Emergency Mgmt. Agency*, 393 F. App'x 160, 162 (5th Cir. 2010). Accordingly, the Court denies Utility's request for injunctive relief on its breach of contract claim against Walters.

C.  *The Court Denies Utility's Request for Injunctive Relief Against TES.*

The Court denies Utility's request for injunctive relief on its tortious interference claim against TES because Utility failed to show the Court has personal jurisdiction over TES.[3] The Court must have personal jurisdiction over a defendant to grant injunctive relief. *See Enter. Int"l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470 (5th Cir.1985).

Personal jurisdiction exists when "the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.* (quoting *Johnston*, 523 F.3d at 609).

To satisfy due process, two elements must be met: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it would reasonably anticipate being brought to court there; and (2) the exercise of jurisdiction over the defendant must "comport[] with fair play and substantial justice." *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992) (citations omitted).

The "minimum contacts" prong of the due process analysis can be met through contacts that give rise to either general or specific jurisdiction. *Gundle Lining Constr. Corp. v. Adams Cnty.*

---

[3] The Court analyzes whether the Court has personal jurisdiction over TES even though Walters is employed by TMS because TES is the named party in this dispute. But the Court finds it would likely not have personal jurisdiction over TMS for the same reasons discussed for TES.

*Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). "General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). In contrast, specific jurisdiction exists "only when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Gundle*, 85 F.3d at 205. Plaintiffs bear the burden of making a prima facie showing that the defendant has minimum contacts with the forum state. *Johnston*, 523 F.3d at 609.

First, TES is not subject to general jurisdiction in Texas because it is not at home in Texas. LLCs are generally only at home in their states of incorporation and principal place of business. *Laday v. Roderick*, No. 1:22-CV-00261, 2023 WL 2188706, at *2 (E.D. Tex. Feb. 23, 2023). TES is an LLC organized under the laws of Louisiana with its principal place of business in Louisiana. Doc. 101, Tempest App'x, 2. And its sole member is a citizen of Louisiana. *Id.* Because TES is not at home in Texas, its contacts with Texas must be "continuous, systematic, and substantial" to subject it to general jurisdiction here. *See Marathon Oil Co.*, 182 F.3d at 295. They are not. TES has no employees in Texas and does not maintain an office in Texas. Doc. 101, Tempest App'x, 2–3. Thus, TES does not maintain a continuous presence in Texas.

Utility argues that TES is subject to general jurisdiction because TES has attended trade conferences in Texas and received an award for its work on storms in Texas. Doc. 104, Reply, 2–3. These facts do not support a finding of general jurisdiction. Indeed, "the Fifth Circuit has held that attending trade conferences, even combined with sales of over $100,000 to Texas customers and related trips to Texas to service the equipment did not support a finding of general jurisdiction." *Meeks+Partners Co. v. Amrit Dev., Inc.*, No. 4:07-CV-1933, 2009 WL 10695108, at

*4 (S.D. Tex. Jan. 26, 2009) (referring to *Johnston*, 523 F.3d at 611). The Court lacks general jurisdiction over TES.

Utility did not argue that TES was subject to specific jurisdiction in Texas. *See generally* Doc. 87, Pl.'s Br.; Doc. 115, Am. Reply, 2–3; *see also Johnston*, 523 F.3d at 609. Accordingly, the Court denies Utility's request for injunctive relief against TES because Utility failed to show the Court has personal jurisdiction.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Utility's Motion for injunctive relief (Doc. 86).

**SO ORDERED**.

**SIGNED: July 18, 2025.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE