UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UTILITY CONSTRUCTION SERVICES, LLC, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:25-CV-1190-B |
| JESSE WALTERS and TEMPEST ENERGY, LLC. | § § § § | |
| Defendants. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Utility Construction Services, LLC ("UCS")'s Motion to Strike or in the alternative Motion to Dismiss for Failure to State a Claim ("Motion to Strike") (Doc. 119). Having reviewed the briefing and applicable law, the Court **DENIES** UCS's Motion.

### I.
### BACKGROUND

This is a dispute between UCS and its ex-employee Defendant Jesse Walters about events occurring during and after Walters's employment. UCS is an electrical utility construction company that provides services throughout the United States. *See* Doc. 80, Second Am. Compl. ¶ 8. Walters was employed with UCS as a project and business development manager from 2019 through 2024. *Id.* ¶¶ 9, 25. UCS alleges that during his employment, Walters abused his position for personal financial gain. *Id.* at 1. Specifically, and in relevant part, UCS claims that Walters used his position to secretly coordinate with a separate, UCS-affiliated entity known as PGS to secure a construction

contract for PGS that usurped UCS's contracted-role on that same construction project (the "Project"). *Id.* ¶¶ 15-27.

UCS brought the present action against Walters in September 2024. *See generally* Doc. 1, Original Compl. Therein, UCS asserted eight causes of action against Walters. *See id.* ¶¶ 27-62. Relevant here is UCS's first cause of action, that Walters breached his employment agreement (the "Retention Agreement")'s confidentiality provisions in sharing certain confidential information with PGS related to the Project. *Id.* ¶¶ 27-31. Walters filed his answer in October 2024. *See generally* Doc. 12, Original Answer. At that time, Walters did not assert any counterclaims. *See id.*

UCS amended its complaint shortly thereafter, in October 2024. *See generally* Doc. 20, First Am. Compl. UCS's First Amended Complaint added new factual allegations regarding Walters's theft of trade secrets from UCS's computer system, including customer data, pricing, bid files, financial records, and certain project-related information. *See id.* ¶ 27. UCS also added seven additional causes of action related to the new allegations. *Id.* ¶¶ 66-98. In November 2024, Walters filed his First Amended Answer. *See generally* Doc. 43, First Am. Answer. Again, Walters did not assert any counterclaims. *See id.*

In May 2025, UCS sought the Court's leave to file its Second Amended Complaint. *See generally* Doc. 76, Mot. Leave. In its brief in support, UCS noted that through discovery they learned that Walters had recorded certain phone calls while employed at UCS in violation of UCS policy. Doc. 77, Br. Mot. Leave, 1. Moreover, UCS learned that, since Walters left UCS in November 2024, he had been working for UCS's direct competitor Tempest Energy, LLC ("Tempest") in violation of a non-compete provision of the Retention Agreement. *See id.* at 2. Walters did not oppose the Motion for Leave. Doc. 76, Mot. Leave, 2. The Court granted the Motion for Leave in June 2025,

*see* Doc. 79, Electronic Order, and UCS's Second Amended Complaint was entered on the record, *see generally* Doc. 80, Second Am. Compl.

The Second Amended Complaint adds allegations about Walters's phone call recordings during his employment, as well as Walters's employment with Tempest. *Id.* ¶¶ 28-35. UCS also names Tempest as a second defendant and asserts one additional cause of action for tortious interference—solely against Tempest. *Id.* ¶¶ 107-112. Walters filed his Second Amended Answer on June 23, 2025. *See generally* Doc. 94, Second Am. Answer. Countercl. (hereinafter "SAA & Countercl.").

Unlike his prior answers, Walters now asserts one counterclaim for "breach of contract by constructively discharging Walters without good cause" (the "Counterclaim"). *Id.* at 19. Specifically, Walters alleges that while employed at UCS, leadership confronted him about the Project, for which Walters denied any wrongdoing. *Id.* at 17-18. When the dispute escalated and further accusations were made, Walters "lost trust and confidence" in UCS leadership and "had no interest in being involved in that behavior or a business that operated in this unethical and illegal manner." *Id.* at 18. Accordingly, Walters alleges, he "resigned from UCS . . . because the conditions of his work at UCS were so hostile and contrary to legal, honest, and ethical business practices that he could not continue to work for UCS." *Id.* at 19. Walters claims that this constituted "constructive discharge" by which UCS breached the Retention Agreement. *Id.* at 19. Walters further claims that the Retention Agreement entitled him to certain incentive and severance payouts in the event of termination without cause, and that UCS did not make those required payments. *Id.* at 19-20.

Now, UCS moves to strike Walters's counterclaim. *See generally* Doc. 119, Mot. Strike. The Court considers that motion below.

## II.

## LEGAL STANDARD

A party seeking to amend its pleading is governed by Federal Rule of Civil Procedure 15. In later stages of pre-trial litigation—where amendment as a matter of course is not available—a party may only amend its pleading "with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Courts are instructed to "freely give leave when justice so requires." *Id.* Where a plaintiff, with the Court's leave, files an amended complaint, Rule 15(a)(3) further instructs that "any *required response* to an amended pleading must be made . . . within 14 days after service of the amended pleading." (emphasis added). Thus, a defendant does not separately need the court's leave to amend its answer, insofar as amendment is *required* to properly *respond* to an amended complaint. *See id.*

## III.

## ANALYSIS

First, the Court considers whether Walters required the Court's leave before filing the Counterclaim. Finding that Walters did require leave, the Court next considers whether, construing the Counterclaim as a motion for leave to amend, Walters is entitled to leave. Concluding that Walters is so entitled, the Court finally denies UCS's alternative Motion to Dismiss Walters's Counterclaim.

A.  *Walters Was Not Permitted to Add His Counterclaim Without Leave of the Court*

UCS contends that while Walters was permitted to file a Second Amended Answer in response to UCS's Second Amended Complaint, Walters was not permitted, without leave of the Court, to add the Counterclaim. Doc. 120, Br. Mot. Strike, 2-3. Specifically, UCS argues that the

Counterclaim is not responsive to the Second Amended Complaint and could have been asserted at the time the initial answer was filed, eight months earlier. *See id.*

Federal circuit courts have not addressed whether counterclaims—filed in response to an amended pleading—are permitted as of right or require the Court's leave. However, many federal district courts have addressed this question.

District courts in this circuit appear to have mainly, if not universally, adopted the "moderate" view, under which "a party [may] file an amended counter-response without leave 'only when the amended complaint changes the theory or scope of the case, and then, the breadth of the changes in the amended response must reflect the breadth of the changes in the amended complaint.'" *Query v. USA*, No. 2:23-CV-01151, 2025 WL 2046535, at *3 (W.D. La. July 21, 2025) (citation omitted); *see e.g.*, *McGinley v. Luv n' care, Ltd.*, No. 3:17-CV-00821 LEAD, 2023 WL 3733896, at *2-3 (W.D. La. May 30, 2023) ("Defendants' altered or newly asserted defenses and counterclaims in the Answer . . . will remain a part of the case *only if and to the extent* that they reflect the breadth of the changes in the amended complaint." (citation modified)); *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:16-CV-00033-RWS, 2017 WL 11630433, at *2 (E.D. Tex. July 11, 2017) ("[A]mended counterclaims are not permissible as a matter of right where plaintiffs' amended complaint did not add any new claims nor did it expand the scope or theory of the case.") (citations omitted); *Cyberonics, Inc. v. Zabara*, No. 12-CV-1118, 2013 WL 3713432, at *2 (S.D. Tex. July 12, 2013) ("[M]ost courts require leave to raise new allegations and defenses that go beyond responding to the new matters raised in the amended complaint." (citations omitted)).

The majority of district courts in other circuits appear to also have adopted the moderate view. *See, e.g.*, *Elite Ent., Inc. v. Khela Bros. Ent.*, 227 F.R.D. 444, 446 (E.D. Va. 2005) (citation

omitted) (explaining and adopting moderate approach); *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, No. C06-1056RSL, 2007 WL 1575955, at *1-2 (W.D. Wash. May 29, 2007) (applying moderate approach); *Uniroyal Chem. Co., Inc. v. Syngenta Crop Prot., Inc.*, No. 3:02CV02253 (AHN), 2005 WL 677806, at *2 (D. Conn. Mar. 23, 2005) (applying the "moderate approach that permits a defendant to respond to an amended complaint that changes the theory or scope of the case by adding counterclaims that similarly change the theory or scope of the case"); *Com. Bancorp, Inc. v. BankAtlantic*, No. CIV. 02-4774 (JBS), 2004 WL 612525, at *2 (D.N.J. Jan. 12, 2004) (denying motion to strike counterclaim because the amended complaint "changed and expanded the scope" of the dispute); *Synermed Int'l, Inc. v. Lab'y Corp. of Am. Holdings*, No. 1:97CV00966, 1999 WL 1939253, at *1 (M.D.N.C. Mar. 3, 1999) ("Most courts addressing this issue have held that a responding party may include a new counterclaim as of right when responding to an amended complaint which expands the theory or scope of its claims." (citations omitted)); *Nolan v. City of Yonkers*, No. 92 CIV. 6067 (KMW), 1996 WL 120685, at *4 (S.D.N.Y. Mar. 19, 1996) ("[D]efendants did not have a right to assert new counterclaims unrelated to the amendment in their answers to the Second Amended Complaint in the same way that they had a right to assert counterclaims in their original answer." (citation omitted)); *cf. Cieutat v. HPCSP Invs., LLC*, No. CV 20-0012-WS-B, 2020 WL 4004806, at *3-4 (S.D. Ala. July 15, 2020) (citations omitted) (rejecting a more permissive approach).

In contrast, under the less accepted "permissive" approach, when a plaintiff amends its complaint, a defendant may "always bring new counterclaims without regard to the scope of the amendment." *Mun. Revenue Servs., Inc. v. Xspand, Inc.*, No. 4:05CV671, 2006 WL 91358, at *2 (M.D. Pa. Jan. 12, 2006). Where such an approach is accepted, a defendant is entitled to respond to

an amended complaint even with "eleventh-hour additions." *Am. Home Prods. Corp. v. Johnson & Johnson*, 111 F.R.D. 448, 453 (S.D.N.Y. 1986). Despite these few cases reflecting a permissive approach, the Court finds the moderate approach to be correct in light of Rule 15(a)(3)'s emphasis on "required response[s]," and the weight of persuasive authority in favor of the moderate approach.

Walters contends that even under the moderate approach, his Counterclaim did not require the Court's leave. Doc. 129, Resp. Mot. Strike, 3. According to Walters, UCS's Second Amended Complaint "changed the scope of its claims against . . . Walters and added a new Defendant," such that "Walters did not have to seek leave to file" what he argues is a "compulsory counterclaim." *Id.* However, Walters fails entirely to tie his new allegations to UCS's modifications in the Second Amended Complaint. UCS added Tempest as a party and asserted new allegations about Walters's phone call recordings and post-resignation employment. *See* Doc. 80, Second Am. Compl. ¶¶ 28-35, 107-112. Neither of these new allegations about Walters nor the addition of Tempest as a defendant "changes the theory or scope of the case," *see Elite Ent.*, 227 F.R.D. at 446, such that Walters must now bring his allegations about breach of the Retention Agreement or constructive termination, where he could not have done so—or was not required to do so—previously. Indeed, UCS's original complaint focused almost entirely on Walters's involvement with PGS on the Project and asserted a claim that Walters breached the Retention Agreement. *See* Doc. 1, Original Compl. ¶¶ 12-25, 27-31. Likewise, the Counterclaim asserts that UCS leadership confronted Walters about his actions surrounding the Project and PGS, and that this created a hostile work environment, through which UCS "constructively discharg[ed] Walters" in breach of the Retention Agreement. Doc. 94, SAA & Countercl., 17-19. Thus, Walters's Counterclaim is wholly unresponsive to *changes* in the Second Amended Complaint.

Because the "breadth of the changes in [Walter's Second Amended Answer]" do not "reflect the breadth of the changes in [UCS's Second Amended Complaint]," Walters was required to seek leave before filing the Counterclaim. *See Elite Ent.*, 227 F.R.D. at 446 (citations omitted).

B. *Justice Requires that the Court Grant Walters Leave to Amend*

Walters requests, alternatively, that the Court construe the Counterclaim as a request for leave to amend under Rule 15(a)(2). Doc. 129, Resp. Mot. Strike, 3. Walters claims that justice requires amendment and that "UCS will suffer no prejudice as UCS recently amended to add a new party, necessitating additional discovery." *Id.* at 3-4. Walters also contends that the Counterclaim is compulsory;[1] thus—without leave to amend—Walters would be precluded from bringing his claim in a subsequent action. *See id.* at 2.

Where "justice so requires" amendment, Rule 15(a) instructs the Court to "freely give leave." *See* Fed. R. Civ. P. 15(a)(2). However, "the fact that a counterclaim might be compulsory does not itself constitute good cause to permit" a party to amend his pleading. *Cf. VP Sales & Mfg., L.P. v. Guerra*, No. 2:22-CV-00224, 2023 WL 8000316, at *8 (S.D. Tex. Sept. 8, 2023). The Court, in determining whether justice requires granting leave to amend, "may consider a variety of factors . . . including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

---

[1] The Court agrees that the Counterclaim is compulsory. Under Federal Rule of Civil Procedure 13, which governs the pleading of compulsory counterclaims, "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). As described more fully above, Walters's Counterclaim plainly arises out of both the transaction (the Retention Agreement) and occurrence (the Project) that was the subject matter of UCS's Original Complaint. Moreover, the Counterclaim did not require the joinder of any additional parties. As such, the Counterclaim is compulsory.

of allowance of the amendment, and futility of the amendment." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

1. Undue Delay

The Court first considers undue delay. Rule 15(a) does not impose a time limit on seeking leave to amend, and this Court's scheduling order permitted the parties to request leave to amend until October 2, 2025—several months after Walters filed the Counterclaim. *See* Doc. 83, Scheduling Order, 1. Nevertheless, "[c]ourts have found 'undue delay' when a plaintiff knew the facts 'all along' but waited over a year after the first amended complaint to seek leave to amend raising those facts." *Kingman Holdings, LLC v. Blackboard Ins. Co.*, No. 23-4525 c/w 24-875, 2025 WL 275505, at *6 (E.D. La. Jan. 23, 2025) (citing *C3PO Int'l, Ltd. v. DynCorp Int'l, LLC*, 663 F. App'x 311, 314-15 (5th Cir. 2016)), *aff'd*, No. 23-4525 c/w: 24-875, 2025 WL 932774 (E.D. La. Mar. 27, 2025); *see Nautilus Ins. Co. v. Tanner*, No. 7:12-CV-00203-O, 2013 WL 12121956, at *2 (N.D. Tex. July 30, 2013) (O'Connor, J.) ("A party's failure to assert a claim 'as soon as he could have' should factor into a court's decision whether to grant leave to amend.") (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)). However, "'delay alone is an insufficient basis for denial of leave to amend: The delay must be undue, i.e., it must prejudice the nonmoving party or impose unwarranted burdens on the court.'" *Kingman Holdings*, 2025 WL 275505, at *6 (quoting *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004)).

As set forth above, Walters could have filed his Counterclaim as early as October 2024, when he received the Original Complaint. *See generally* Doc. 1, Original Compl. Despite the Counterclaim's compulsory nature, Walters failed to do so. He also did not attempt to add the Counterclaim in his answer to UCS's First Amended Complaint. *See generally* Doc. 43, First Am.

Answer. Instead, Walters waited until late June 2025 to assert the Counterclaim. *See generally* Doc. 94, SAA & Countercl. Thus, Walters plainly and inexplicably "delayed" asserting his claim. However, Walters's Counterclaim relies directly on the same facts forming the basis for many of UCS's own claims, and discovery does not close in this case until March 2026. *See* Doc. 83, Scheduling Order, 1. Thus, the Court sees little to suggest that the delay to bring the Counterclaim "prejudice[s] [UCS] or impose[s] unwarranted burdens on" the Court. *See Kingman Holdings*, 2025 WL 932774, at *6 (citation omitted).

  To suggest that Walters's delay is a sufficient basis to deny leave to amend, UCS cites the Fifth Circuit's decision in *Wimm v. Jack Eckerd Corp.*, where the Court affirmed the district court's denial of leave to amend. 3 F.3d 137 (5th Cir. 1993). There, the plaintiffs waited nine months after filing suit to add claims related to facts already known to them before the action was filed in an apparent attempt to avoid an adverse decision on a pending summary judgment motion. *Id.* at 139-40. Finding that the motion for leave to amend was brought in bad faith and with dilatory motive, the district court denied leave, and the Fifth Circuit affirmed. *Id.* at 141. While the plaintiffs' "serious example of delay" in *Wimm* was certainly relevant, the Fifth Circuit (and district court before it) grounded its determination in the presence of an ulterior motive and bad faith. *See id.* at 139-40, 142. Thus, *Wimm* does not stand for the proposition that delay alone is sufficient basis for denial of leave to amend. Here, unlike in *Wimm*, there is no evidence or allegation to suggest bad faith or dilatory motive. In light of the Fifth Circuit's subsequent guidance that "delay alone is an insufficient basis for denial of leave to amend," *see Mayeaux*, 376 F.3d at 427, *Wimm* does not tip the scales against granting leave to amend.

Accordingly, Walters's delay in asserting the Counterclaim does not provide the Court with a basis to deny leave to amend.

2. Bad Faith, Repeated Failures to Cure, and Undue Prejudice

There is no evidence, or argument asserted, that Walters brings the Counterclaim in bad faith. Nor is the Counterclaim a "defect" that Walters has repeatedly failed to cure. Moreover, there is little to suggest "undue prejudice" where deadlines for discovery, dispositive motions, and trial remain months away. *See* Doc. 83, Scheduling Order, 1-2 (discovery and dispositive motions deadlines set in March 2026; trial set for June 2026). And given the Counterclaim's connection to UCS's allegations in the Original Complaint, any need for additional discovery is naturally limited.

3. Futility

"An amendment is futile if it would fail to survive a Rule 12(b)(6) motion. Therefore, we review the proposed amended complaint under the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation modified). Federal Rule of Civil Procedure 12(b)(6) allows defendants to move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Walters claims that UCS made working conditions intolerable such that he was constructively discharged without cause. Doc. 94, SAA & Countercl., 17–19. This, according to Walters, was a breach of his rights under the Retention Agreement. *Id.* at 20. Accordingly, the Court must determine whether Walters's Counterclaim, construed as a stand-alone claim for constructive discharge or as a claim for breach of contract, would survive a motion brought under 12(b)(6). *See Marucci Sports*, 751 F.3d at 378.

"Although constructive discharge has import in both retaliation and hostile work environment claims, it is not in itself a separate cause of action." *Mann v. Bank of Am., N.A.*, No. 3:08-CV-01997-O, 2009 WL 2135790, at *3 (N.D. Tex. July 16, 2009) (O'Connor, J.) (citation modified). Properly construed, constructive discharge is merely an element of another claim, such as one brought under Title VII. *See id.* (citation omitted). Walters does not allege a violation of Title VII. Thus, to the extent Walters asserts a stand-alone cause of action for constructive discharge, he fails to state a claim.

But, even if not a civil rights claim, Walters's Counterclaim might assert enough facts for a facially plausible breach of contract claim. "The elements of a breach of contract action under Texas law are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (quotation marks and citation omitted). "Texas law does recognize the doctrine of constructive discharge, which has been applied in the context of an alleged breach of an employment contract." *Epps v. NCNB Tex.*, 7 F.3d 44, 46 (5th Cir. 1993) (citing *Hammond v. Katy Indep. Sch. Dist.*, 821 S.W.2d 174, 177 (Tex. App.—Houston [14th Dist.] 1991, no writ)). "To find a

constructive discharge, a court must determine whether or not a reasonable person in the employee's position would have felt compelled to resign." *Hammond*, 821 S.W.2d at 177 (citation omitted). However, "[t]ermination of at will employment does not invalidate a restrictive covenant and it does not give rise to a claim for constructive discharge." *Drummond Am., LLC v. Share Corp.*, 692 F. Supp. 2d 650, 657 (E.D. Tex. 2010); *cf. Peoples v. Dall. Baptist Univ.*, No. 05-95-00583-CV, 1996 WL 253340, at *3 (Tex. App.—Dallas May 14, 1996, no writ) (holding that "'at-will' employment status precludes an action for wrongful discharge" (citations omitted)).

The Court finds at least two possible constructions of Walters's Counterclaim labeled "breach of contract/constructive discharge." On one hand, the Counterclaim could be understood as a non-viable claim for wrongful termination of at-will employment. Walters states that "UCS breached [the Retention Agreement] by constructively discharging Walters without good cause, as required under the contract." Doc. 94, SAA & Countercl., 19. However, the Retention Agreement is an at-will agreement. *See* Doc. 1-1, Retention Agreement, 6. Walters acknowledges as much in his response opposing the Motion to Strike. *See* Doc. 129, Resp. Mot. Strike, 4. Construed this way, Walters alleges constructive discharge of an at-will employment relationship and thereby would fail to state a claim. *See Drummond Am.*, 692 F. Supp. 2d at 657 ("Termination of at will employment . . . does not give rise to a claim for constructive discharge.").

On the other hand, the Counterclaim could assert a contractual breach for failure to pay benefits owed. In this regard, Walters alleges that the Retention Agreement entitled him to funds under UCS's Long Term Incentive Program ("LTIP"), certain bonuses, and a severance package, in the event he be terminated without cause. *See* Doc. 94, SAA & Countercl., 15. Walters further alleges that UCS failed to pay out those funds after he was constructively discharged. *Id.* at 19-20.

Construed in this form, Walters alleges that UCS breached the Retention Agreement's long-term incentive and severance provisions by failing to pay out funds to which he was entitled after his constructive termination.[2] *See* Doc. 1-1, Retention Agreement, 4-5. Applying the elements of breach of contract, (1) the existence of a "valid contract," the Retention Agreement, is not in dispute; (2) Walters alleges that he performed under the contract in discharging his duties as an employee (thereby entitling him to LTIP and severance payments in the event of termination without cause); (3) Walters alleges that after he was terminated, UCS did not make payments required under the Retention Agreement's severance and long-term incentive provisions, thereby breaching that agreement; and (4) Walters alleges that he sustained damages in the form of LTIP, bonuses, and severance payments not received. *See* Doc. 94, SAA & Countercl., 15-16, 19-20; *Lowen Valley View*, 892 F.3d at 170 (laying out elements of breach of contract in Texas). Accordingly, Walters alleges "enough facts to state a claim [for breach of contract] that is plausible on its face." *See Twombly*, 550 U.S. at 570.

In sum, because none of the circumstances against granting leave are present and because "justice so requires" it, the Court grants Walters leave to amend to assert the Counterclaim.

C.    *UCS's Motion to Dismiss is Denied*

As an alternative to its Motion to Strike, UCS asks the Court to dismiss the Counterclaim under Rule 12(b)(6). However, as the Court has addressed above in its analysis of whether asserting the Counterclaim would be futile, Walters states a valid claim for breach of contract. Accordingly, UCS's Motion to Dismiss is **DENIED**.

---

[2] *Cf. Gardner v. Abbott*, 414 S.W.3d 369, 381 (Tex. App.—Austin 2013, no pet.) ("For remedial purposes, constructive discharge is functionally the same as an actual termination."). Walters's allegations regarding constructive termination sufficiently allege "termination without cause" as necessary to trigger the Retention Agreement's LTIP and severance provisions.

## IV.

## CONCLUSION

For the foregoing reasons, UCS's Motion to Strike is **DENIED**. While the Court finds that Walters was not entitled to assert the Counterclaim under Rule 15(a)(3), the Court construes the Counterclaim itself as a motion for leave and, granting that motion, recognizes Walters Second Amended Answer (Doc. 94) as properly entered on the record.

**SO ORDERED.**

**SIGNED: December 29, 2025.**

_____
JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE